UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMAL A. ADAMS, a/k/a ISHMEAL HERU-BEY,<br><br>Defendant. | Criminal Action No. 15-44 (JEB) |

**MEMORANDUM OPINION**

Defendant Ishmeal Heru-Bey, formerly known as Jamal Adams, was charged with three counts relating to obstructing the internal-revenue laws and tax evasion. A jury ultimately convicted him of one and acquitted him of two others. While his case was on appeal to the D.C. Circuit, the Supreme Court decided Marinello v. United States, 138 S. Ct. 1101 (2018), which the Government conceded rendered the jury instructions at Heru-Bey's trial plainly erroneous. The Circuit thus remanded to this Court to determine what effect on his conviction, if any, that error should have. This Court now concludes that it requires vacatur of the conviction and a new trial.

**I.    Background**

As relevant here, Heru-Bey was convicted in 2015 of one count of corruptly endeavoring to obstruct and impede the due administration of the internal-revenue laws in violation of 26 U.S.C. § 7212(a). The Government advanced three factual bases for such obstruction: first, Defendant submitted W-4 forms in 2006, 2008, 2009, and 2010 falsely claiming that he was exempt from federal-income-tax withholding; second, he filed a bankruptcy petition in 2010 in which he did not list the IRS as a creditor even though he had tax debts; and third, he filed tax returns in 2011 and 2014 in which he falsely claimed unreimbursed employee expenses. See

1

ECF No. 77 (Transcript 5) at 18. The defense's theory, although not fully responsive to all of these allegations, was that Heru-Bey's real-estate losses covered the tax deficiency, meaning that no tax was due. Id. at 44–56. In finding him guilty, the jury rendered only a general verdict and did not specify on which of the Government's three theories it had relied.

Defendant appealed that conviction to the D.C. Circuit. See ECF No. 62 (Notice of Appeal) at ECF p. 12. While that appeal was pending, the Supreme Court issued Marinello, which further specified the requirements for a conviction under § 7212(a). It held that the Government must show a "relationship in time, causation, or logic" — *viz.*, a nexus — between a defendant's conduct and "a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." Marinello, 138 S. Ct. at 1109. That is, a defendant must impede not the day-to-day administration of the tax code, but rather some specific investigation or activity, and there must be a relationship between his obstructive act and the Government's particularized proceeding.

The Court of Appeals thereafter *sua sponte* ordered supplemental briefing "addressing the effect, if any, of the [Marinello decision]" on Defendant's case. See Briefing Order, United States v. Adams, No. 16-3021 (D.C. Cir. Mar. 27, 2018). In its brief, the Government conceded that the jury instructions — which did not contain the nexus requirement or detail the nature of the requisite IRS proceeding — were "'error,' and that error [was] 'plain' at the time of appellate consideration." Appellee Supp. Br. at 5 (D.C. Cir. May 8, 2018) (citation omitted).

Rather than decide whether that error required reversal, the Circuit "remanded [to this Court] to address in the first instance the effect, if any," Marinello has "on this case." Remand Order (D.C. Cir. June 22, 2018). It further instructed that, because the Government had conceded "that the jury instructions at trial were erroneous under Marinello, and that this error

2

was plain," it only "remains to be determined whether this error satisfies the final two prongs of plain error review" — namely, "whether the error 'affect[s] substantial rights' and 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Id. (citations omitted).

Having obtained additional briefing on remand, see ECF Nos. 88 (Gov't Brief), 90 (Def. Response), 92 (Gov't Reply), this Court, accordingly, now addresses those questions.

## II. Analysis

Objections not timely raised in the district court — such as this one — are reviewed for plain error. See United States v. Lawrence, 662 F. 3d 551, 556 (D.C. Cir. 2011). That standard requires (1) error, (2) that must be plain, (3) that must affect a defendant's substantial rights, and (4) that must seriously affect the fairness, integrity, or public reputation of the judicial proceedings. See United States v. Olano, 507 U.S. 725, 732 (1993). Because the Government has already conceded that the first two prongs are satisfied here, the Court evaluates only the third and fourth.

### A. Substantial Right

For an error to impinge on a substantial right, a defendant must demonstrate a "reasonable probability that the error affected the outcome of the trial." United States v. Marcus, 560 U.S. 258, 262 (2010). This is the same standard used to assess prejudice in the ineffective-assistance-of-counsel context. See United States v. Eli, 379 F.3d 1016, 1019 (D.C. Cir. 2004). In that context, a reasonable probability is one "sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 (1984). The "undermines confidence" standard "is not a stringent one." Hull v. Kyler, 190 F.3d 88, 110 (3d Cir. 1999); see also United States v. Gaviria, 116 F.3d 1498, 1514 (D.C. Cir. 1997) ("Strickland requires reasonable probability, not

certainty."). Indeed, "[i]t is less demanding than the preponderance standard." Hull, 190 F.3d at 110.

Here, Heru-Bey meets that lenient standard. The Court must determine whether there is a reasonable probability that, had the jury been instructed on Marinello's particularized-proceeding and nexus requirements, the outcome would have been different. While the kind of specific IRS proceedings that would satisfy Marinello are present in this case, evidence is lacking in the trial record to establish — under any of the Government's three theories of guilt — a relationship between those proceedings and any of Defendant's obstructive actions.

At trial, IRS records custodian Kristy Morgan testified about Service proceedings involving Heru-Bey. See ECF No. 73 (Transcript 1) at 147–207; ECF No. 74 (Transcript 2) at 34–45. The agency first sent him a letter in December 2006, warning him that he had flouted his obligation to file a tax return in 2005. See 1 Tr. at 151; 2 Tr. at 34–35. In June 2008, it sent him a second letter regarding his failure to file returns in both 2005 and 2006. See 1 Tr. at 159–60. Weeks later, the Government notified Heru-Bey that it intended to prepare for him substitutes for return (SFRs) for 2005 and 2006; it completed those in July 2008. Id. at 157–160. The IRS finally issued in June 2009 statutory notices of deficiency regarding tax years 2005 and 2006, and in May 2010, it promulgated a notice indicating that it intended to levy Defendant's wages to collect his unpaid taxes. Id. at 155, 160. From December 2010 through June 2015, the Service garnished Heru-Bey's wages. Id. at 155–56.

There is little doubt that these IRS actions constitute the kind of "particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action" contemplated by Marinello. See 138 S. Ct. at 1109. But that is not enough. The Government must also demonstrate that a nexus exists between those proceedings and any of

4

Defendant's actions in furtherance of the Government's three theories of obstruction. This it has not done.

The Government first maintains that Heru-Bey obstructed the administration of the tax code by filing in 2006, 2008, 2009, and 2010 false W-4 forms claiming he was exempt from federal-income-tax withholding. See Gov't Br. at 7; see also 1 Tr. at 112. The prosecution elaborates that these forms are related to the IRS investigation because Defendant filed them after receiving notices regarding efforts to assess his taxes. See Gov't Br. at 7. The Court cannot agree. W-4s govern an employee's withholding for an upcoming year. Filing false forms would therefore have some prospective effect but would not impair an existing IRS investigation into tax due for past years. In other words, even assuming Heru-Bey knew of the IRS's investigative efforts, it is difficult to conclude that continuing to file false W-4s was an effort to thwart them. To be sure, doing so may well obstruct the IRS's day-to-day efforts to administer the tax code, but "the scope of [§ 7212] . . . does not include routine . . . work carried out in the ordinary course by the IRS." 138 S. Ct. at 1110. Indeed, the Supreme Court specifically reasoned that § 7212 did not reach quotidian IRS activities in part because things like "willful failure to furnish a required statement to employees," "failure to keep required records," and "misrepresenting the number of exemptions to which an employee is entitled on IRS Form W-4" were criminalized with lesser penalties in separate portions of the code. Id. at 1107.

The Government next contends that Defendant engaged in obstruction when he filed in 2010 a bankruptcy petition on which he did not include the IRS as a creditor. See Gov't Br. at 7; see also Gov't Reply at 3. "Because the IRS was not" so listed, "it was not given notice of the bankruptcy proceeding and therefore was left unaware of public filings in which [D]efendant detailed his income and assets." Gov't Br. at 7. As an initial matter, given that these IRS

5

liabilities cannot be discharged in bankruptcy, see ECF No. 75 (Transcript 3) at 32, the Government does not make clear how failing to list the IRS as a creditor actually impeded its collection efforts. Even had it adduced evidence of such imposition, the Government likewise has not even attempted to show there was evidence at trial that Heru-Bey's intent in filing the bankruptcy petition was to obstruct. Cf. Marinello, 138 S. Ct. at 1108 (reasoning that § 7212's requirement that a defendant act "corruptly" is indistinguishable from his acting "willfully"). It is not clear, moreover, that — even if the Government had made a showing that the Service's efforts were somehow impeded — garnishment of Heru-Bey's wages are the kinds of particularized activities contemplated by Marinello. At the very least, garnishment is an ongoing remedy to a tax violation found by the service in a liability-phase proceeding such as "an investigation, an audit, or other targeted administrative action." Id. at 1109. And garnishment was all that was left at that point. The Government has acknowledged that "[t]he IRS had already formally assessed taxes and penalties against [D]efendant and began garnishing his wages in an attempt to collect his unpaid taxes when" he filed his bankruptcy petition in June 2010. See Appellee Supp. Br. at 13 (D.C. Cir. May 10, 2018). In other words, there was no longer a pending investigation for Heru-Bey to obstruct.

The Government's final theory was that Defendant's false claim of unreimbursed employee expenses on his tax returns for the years 2011 and 2014 understated his tax liability and obstructed the IRS's administration of the tax code. See Gov't Br. at 7. Specifically, it maintains that filing returns that understate tax liability reflects a "change in tactics" from Defendant's previous practice of filing false W-4s and that the shift reflects a strategic intent to "obstruct the IRS." Id. The Court is not persuaded. To begin, the Government never contends that Heru-Bey was under IRS investigation for tax years 2011 and 2014. It offers no reason,

6

moreover, that falsifying a return for those years would have obstructed an investigation into his 2005 and 2006 taxes. If the Government intends to suggest that the 2011 and 2014 returns were obstructive, it must be claiming not obstruction of that specific investigation but obstruction of the IRS's collection activities. Again, Marinello does not countenance such a broad understanding of § 7212. See 138 S. Ct. at 1107. The Court there specifically rejected as overbroad the argument the Government now presses — namely, it reasoned that § 7212 is "not . . . a 'catchall' for every violation that interferes with what the Government describes as the 'continuous, ubiquitous, and universally known' administration of the Internal Revenue Code." Id. (citation omitted).

The Court notes, finally, that the Government declined a special unanimity instruction at trial. See 5 Tr. at 84. That is, it did not ask that the jury, to find Defendant guilty, be instructed that it must be unanimous as to which one or more of the Government's three theories of obstruction was the basis. As a result, even were one of these theories valid, there would be no way for this Court to know that the jury meant to convict on that one and not the invalid others.

B. Fairness of the Proceeding

Having determined Heru-Bey's substantial rights were affected, the Court must next consider the fourth prong of plain-error analysis — *viz.*, whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (citation omitted). It has little trouble concluding that standard is met here. Examining the Supreme Court's recent treatment of the fourth prong confirms this understanding. See Rosales-Mireles v. United States, 138 S. Ct. 1897 (2018).

In Rosales-Mirales, a presentence-investigation report mistakenly counted twice one of the defendant's convictions. That resulted in a guidelines range of 77 to 96 months; the correct

7

range would have been 70 to 87 months.  See 138 S. Ct. at 1905.  He was sentenced to 78 months' imprisonment.  Id.  The Court held the fourth prong of Olano was met because even though the sentence actually imposed was within the correct guidelines range, there was a reasonable probability that he was serving a higher sentence because of the error.  Id. at 1907.  It elaborated that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public perception of judicial proceedings," especially where it results not from "trial strateg[y]" but "judicial error."  Id. at 1908 (internal quotation marks and citation omitted).

     For similar reasons, Heru-Bey satisfies the fourth prong here.  Given the reasonable probability that the jury would not have convicted given the proper instruction — or that any such conviction would not have stood — there is a serious risk in this case of an unnecessary deprivation of liberty.  Cf. United States v. Prado, 815 F.3d 93, 102–04 (2d Cir. 2016) (finding fourth prong met where there was reasonable probability of different outcome had jury been properly instructed).  The Government contends that errors in jury instructions will not always satisfy the fourth prong.  See Gov't Br. at 9–10 (citing Johnson v. United States, 520 U.S. 461, 470 (1997)).  In Johnson, however, evidence supporting the element of the offense on which the jury should have been instructed was "overwhelming," and the Court did not find a likelihood that the verdict would have been affected.  See 520 U.S. at 469–70.  The Government offers no authority for the proposition that, where there is a reasonable probability the outcome at trial would have been different had the jury been properly instructed, the fourth prong is not met.

### III. Conclusion

For these reasons, the Court will vacate Heru-Bey's conviction in light of the erroneous jury instruction but will allow the Government to retry the case if it so elects. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 10, 2019